(83 Misc. Rep. 232)

### JACKSON v. OLIN J. STEPHENS, Inc.

(City Court of New York.   December 18, 1913.)

1. PRINCIPAL AND AGENT (§ 33*)—TERMINATION OF CONTRACT.
    Where a person is employed to sell goods on commission, no term of employment being specified, the employer may terminate the agency at any time.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 54; Dec. Dig. § 33.*]

2. PRINCIPAL AND AGENT (§ 89*)—COMPENSATION—ACTIONS—EVIDENCE—SUFFICIENCY.
    In a suit by one employed to sell coal on commission, evidence *held* sufficient to support a finding that the contract had been terminated before the time of the accrual of the alleged commissions.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 216, 229–239; Dec. Dig. § 89.*]

3. PRINCIPAL AND AGENT (§ 81*)—DISCHARGE—RIGHT TO COMMISSIONS.
    Where a person is engaged to sell goods on a commission, the termination of his contract of employment, although wrongful, terminates all rights he may have to commissions for orders thereafter placed with his employer by customers whom he first secured, and his only right of redress is an action for wrongful discharge.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 194–214, 219, 223; Dec. Dig. § 81.*]

Action by Mrs. Ida Jackson against Olin J. Stephens, Incorporated. There was a verdict for defendant, and plaintiff moved for new trial. Motion overruled.

Henry Kuntz, of New York City, for plaintiff.
William C. Relyea, of New York City, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

FINELITE, J. In this case the jury rendered a verdict in favor of the defendant. A motion was thereupon made to set the verdict aside as contrary to the law, contrary to the evidence, and upon all the grounds specified in section 999 of the Code of Civil Procedure. The facts, briefly stated, are as follows: The plaintiff was employed by the defendant as its agent long prior to April, 1911, and was receiving certain commissions from the defendant upon sales of coal made to certain customers of the plaintiff. Plaintiff claims that in April, 1911, the amount of commissions to which she was entitled was cut down to 15 cents per ton on all egg, stove, broken, and nut coal sold by plaintiff to her customers and 10 cents per ton on all pea coal. This fact is not denied by the defendant. Whether or not there was sufficient evidence for the jury to base their verdict upon the fact that there had been a discharge, either rightfully or wrongfully, is the only question before the court on this motion.

[1, 2] If the plaintiff was discharged prior to July 1, 1911, as claimed by the defendant, then all commissions claimed by the plaintiff must fall. If the discharge was wrongful, agency of this kind necessarily terminates at the will of the employer, and the employé has but one remedy, namely, a suit for damages for wrongful discharge, and the plaintiff cannot maintain an action to recover commissions on the theory on which this action is brought. For the purpose of elucidating the facts as testified upon the trial hereof, it is necessary to refer to the evidence as well as to the correspondence had between the parties hereto, which, in substance, are as follows: About a year prior to April 1, 1911, plaintiff had been selling coal for the defendant and receiving commissions as compensation for said services. On February 13, 1911, defendant wrote plaintiff the following letter (defendant's Exhibit 4):

"Monday, February 13, 1911.

"Mrs. Ida Jackson, 492 Wendover Avenue, New York—My Dear Madam: We have decided to discontinue your services as a saleswoman for us on March 1. We find that at the price coal has been sold and the commission we have been paying we are actually out of pocket on a number of your orders. This, as you can readily imagine, is not at all satisfactory.
"Yours truly,                    [Signed]  Olin J. Stephens, President."

A day or two after the letter was written, the plaintiff saw Mr. Stephens and admitted having received this letter, and Mr. Stephens says that the conversation was as follows:

"Mrs. Jackson came into the office and objected to our discontinuing her agency for the sale of coal for our firm, * * * and she said 'that as long as she had certain contracts which terminated on the first of the following April that she felt as though her agency ought to continue until that time.' I consented that she get commissions on any business she brought in up to the first of April, 1911, but after that time her agency for the sale of coal for our firm should absolutely discontinue and end." M. pp. 34, 35.

This letter was followed up on March 15, 1911, by a letter introduced in evidence by plaintiff as Exhibit A, as follows:

"March 15, 1911.

"Mrs. Ida Jackson, No. 492 Wendover Avenue, New York—Dear Madam: You are hereby notified that we have decided to discontinue your services as agent at the end of the month of March.
"Yours truly,                    Olin J. Stephens, President."

A day or two after this letter was written, the plaintiff called, and the following conversation with Mr. Stephens took place:

"She said she was afraid she could not take away all her customers. I said I did not believe that she could, and she asked me would I not continue to pay her commission on those customers. Well, I said, in order to get the thing settled and out of the way, as we did not care to be bothered with it, that we would not accept any new business from Mrs. Jackson after the 1st of April, 1911, but we would continue to pay her commission up to the 1st of July. That would be for the months of April, May, and June, in order to give her ample opportunity, if she were able to, to take any customers that she claimed to Burns Brothers, for whom she was selling coal at the same time." M. pp. 36, 37.

On the 12th of April, 1911, so as to have no mistake, the defendant followed up this last conversation with a letter confirming this conversation, introduced in evidence as defendant's Exhibit 1, reading as follows:

"April 12, 1911.

"Mrs. Ida Jackson, 492 Wendover Avenue, New York—Dear Madam: In order that there may be no misunderstanding with regard to your position with this firm, we wish to notify you that we do not care to accept any new customers subsequent to April 1, 1911, and will discontinue paying you any commissions on any customers after July 1, 1911.

"Yours truly,                              Olin J. Stephens, President."

It is true that Mrs. Jackson denies that she was discharged, and claims she never had that last conversation with Mr. Stephens. Whether this is so or not is clearly within the province of the jury and not of the court. Plaintiff, on cross-examination of Mr. Stephens, offered in evidence a little book which was marked "Exhibit D," containing an entry in the witness' handwriting that the commissions on pea coal after April 1, 1911, was to be 10 cents per ton, but on domestic coal 15 cents per ton. When the said witness' attention was called to the entry in said Exhibit D, he stated:

"That the commissions which the plaintiff was to get applied to the commissions which she was to receive between April 1 and July 1, 1911, and that the entry in said book was made about the middle of March." M. pp. 47, 48.

The plaintiff lays great stress upon this entry (plaintiff's Exhibit D) to support her contention, while the defendant's testimony is supported by the letters written to her, defendant's Exhibit 1 and 4 and plaintiff's Exhibit A, and it is also corroborated by the witness Spier, who testified that on one occasion when the plaintiff left Mr. Stephens' office and came to him and said, "He cannot discharge me this way, and I will show him he cannot." The plaintiff's testimony is further impeached by the entries in the small book (defendant's Exhibit 6), on the last four pages, which clearly shows that on some orders she was still receiving 25 cents a ton, and that the object of her call upon Mr. Stephens was not to merely reduce her commission to a 10 and 15 per cent. basis, as testified to by her. There is some corroboration of defendant's theory of the case in what transpired afterwards. The plaintiff called upon Mr. Spier in the summer of 1911 and asked him for her commissions, and Mr. Spier said that the plaintiff was not to get anything, but said that he would take the matter up with Mr. Stephens when he returned, and in the fall of 1911, when Mr.

Stephens returned, Mr. Spier informed plaintiff that Mr. Stephens had not changed his mind and that she was to get no more commissions. M. pp. 21, 22. The plaintiff concedes that she was paid in full for all commissions which she had claimed on her bill of particulars down to July 1, 1911, and that she has been overpaid, in fact 60 cents on this commission. M. pp. 28, 29.

[3] The plaintiff also admits that she did not procure any of the orders upon which she is suing for commissions on this account personally. She did not go to her customers; she left them alone, and all of these customers that she claims a commission on brought their orders in Stephens' office themselves, and the plaintiff's claim for a commission is based on the fact that she originally brought the customers in and that these orders were renewal ones. M. pp. 22, 23. Reverting back to the question of the alleged employment, as claimed by the plaintiff: Is not plaintiff's remedy in an action for damages for a wrongful discharge? This proposition of law was clearly established in Scott v. Engineering News Pub. Co., 47 App. Div. 558, 62 N. Y. Supp. 609, in which case the court stated as follows:

"Upon the contract as thus found, the plaintiff contends that he is entitled to recover his commissions upon advertisements received by the defendant, after his discharge, from customers whom he originally secured. The agreement as to commissions upon all business that followed the original contracts was founded upon the defendant's right to the plaintiff's continuous service. He was to have his commission upon all such business, not merely because he had secured these original contracts, but because he was there to aid, if necessary, in securing renewals or additional contracts, and in keeping his customers in touch with the defendant. Whether the renewals or additional contracts came in with or without his personal intervention was unimportant, so long as he was there to spur customers, should they lag. These customers were his, and his interest to keep them for the joint benefit of himself and his employer was the implied consideration for the defendant's agreement to pay him a commission upon all business that followed the original contract. He was consequently entitled to commissions upon renewals or additional contracts which came in during his period of employment. We might even go further and concede that he was entitled to contracts which he had previously secured. There is, however, absolutely nothing in the language of the contract to justify the extreme view of it which the plaintiff now takes. The customers were his while the employment lasted, but they were not his when they chose to contract directly with the defendant after his connection with the latter had ceased. The new contracts which these customers made with the defendant after the plaintiff's discharge were independent of those made during the period of his employment. In no just sense did they cover business which followed the original contracts. They covered business which came to the defendant upon a new status, and under the influence of fresh considerations. If the plaintiff is right, then these customers were perpetually his, and they could never, in any contemplated business relation to the defendant, get away from him. He would have more than a life enjoyment with respect to business emanating from them to the defendant, for the right to commissions, as now claimed, would, upon his death, undoubtedly go to his legal representatives. This was never contemplated. The construction which the plaintiff places upon this contract is strained and far-fetched, while that given to it by the referee is entirely reasonable and must be sustained."

See, to the same effect, Star Fire Ins. Co. v. Ring, 118 App. Div. 107, 103 N. Y. Supp. 137; Marbury v. Barnet, 17 Misc. Rep. 386, 40 N. Y. Supp. 76.

The jury rendered a verdict in favor of the defendant upon the facts adduced, and, upon the court's charge as to the law, the court in its

discretion would not be justified·in setting aside the verdict and granting a new trial unless it is clearly demonstrated that the verdict thus rendered was by mistake, prejudice, passion, or bias in the minds of the jury. Berkowitz v. Cons. Gas Co., 134 App. Div. 389–391, 119 N. Y. Supp. 100; Kingsley v. Finch, Pruyn & Co., 54 Misc. Rep. 317, 105 N. Y. Supp. 968; Dambmann v. Met. St. Ry., 55 Misc. Rep. 60, 106 N. Y. Supp. 221; Dallin v. Mayer, 122 App. Div. 676, 677, 107 N.·Y. Supp. 316; Wagner v. H. Herrmann Lumber Co. (Sup.) 121 N. Y. Supp. 607; McCann v. N. Y. & Q. Co. R., 73 App. Div. 305, 76 N. Y. Supp. 684; Layman v. Anderson & Co., 4 App. Div. 124, 38 N. Y. Supp. 883. In the last case cited it is pointed out wherein the trial court would be justified in setting aside a verdict as rendered by the jury.

As I fail to find that the verdict was rendered contrary to the law or contrary to the evidence, the motion for a new trial must therefore be denied. Settle order on one day's notice.